791 F.2d 26
 1986 A.M.C. 2312
 Albertine Madge Van Amersfoorth VAN NIJENHOFF, on her own
behalf, as executrix and on behalf of the Estate of Johannes
Christiaan van Amersfoorth and as mother/guardian of Marjori
Renate van Amersfoorth, Stella Patricia van Amersfoorth,
Claudia Jean van Amersfoorth, Kenneth Martin van
Amersfoorth, Alexander Jimmy-John van Amersfoorth and David
Wayne van Amersfoorth and as an attorney-in-fact and
representative of Richard Melvin van Amersfoorth, Plaintiff-Appellant,
v.
BANTRY TRANSPORTATION CO., Universe Tankships (Delaware)
Ltd., National Bulk Carriers, Inc., and Bantry
Tanker Agency, Ltd., Defendants-Appellees.
 No. 384, Docket 85-7113.
 United States Court of Appeals,
Second Circuit.
 Argued Sept. 30, 1985.
Decided May 21, 1986.
 
 Sandra R.M. Gluck, New York City (Joseph T. Stearns, Walker & Corsa, New York City, of counsel), for plaintiff-appellant.
 Thomas H. Healey, New York City (Healey & McCaffrey, New York City), for defendants-appellees.
 Before FRIENDLY,* MANSFIELD and WINTER, Circuit Judges.
 WINTER, Circuit Judge:
 
 
 1
 This appeal, brought on behalf of the widow and seven children of Captain Johannes Christiaan van Amersfoorth, the late master of the Universe Kuwait, raises questions concerning the propriety of the jury's $116,810 verdict for the plaintiff. We affirm with regard to the application of principles of comparative fault but reverse as to the proper discount rate.
 
 
 2
 At approximately 10:45 A.M. on November 25, 1977, the captain fell more than 17 feet from a beam in the ship's forepeak tank and sustained very serious head injuries, including a fractured skull. The ship did not head for the nearest port, Saigon, some 17 hours away, but rather sought medical help from other marine traffic. However, such help did not become available until approximately 10:10 P.M. when a doctor from a Soviet merchant ship arrived on board. During the course of treatment, the doctor injected the captain with morphine, which is contraindicated for a head injury to an unconscious patient. As a result, the captain died around midnight.
 
 
 3
 The widow, Albertine Madge van Amersfoorth van Nijenhoff, brought this wrongful death action on behalf of herself and her seven children. After a trial, the jury returned a verdict in the form of answers to specific questions appended to this opinion. The jury found that the ship was seaworthy and that the fall was not caused by the negligence of the defendants. However, it found that the defendants did not use due care to secure medical treatment after the captain had been injured. The jury found damages of $340,100, but reduced the award by 66 2/3% because of the captain's contributory negligence. In discounting to present value the amount awarded for future losses, the jury chose a discount rate of 20%. The district court found that the 20% figure had no support in the record and reduced the rate to 10%. The final amended judgment totaled $116,810. Plaintiff appeals from that judgment, claiming inter alia that the award should not have been reduced by the percentage of contributory negligence and that the 10% discount rate was not supported by the record.
 
 
 4
 Appellant argues that the captain's negligence in causing the fall cannot lessen the damages awarded for the shipowner's subsequent failure to secure adequate medical care. The jury found that the captain was solely responsible for his fall. Because he never regained consciousness thereafter, the failure to secure prompt and adequate medical care must be attributed entirely to the shipowner. Appellant argues, citing Restatement (Second) of Torts Sec. 433A, that where a plaintiff has suffered such distinct harms, damages must be apportioned according to the amount attributable to each cause. The captain's responsibility for the damages suffered in the fall, she concludes, cannot be used to reduce the damage suffered by reason of inadequate medical care. The shipowner argues, on the other hand, that the injuries here were causally related and must be viewed as a whole, fault being allocated proportionately. See Johannessen v. Gulf Trading & Transportation Co., 633 F.2d 653 (2d Cir.1980).
 
 
 5
 We need not resolve this issue, however, because appellant never asked that the jury make the distinctions she now describes as imperative. Apportionment of damages requires separate findings as to the damage caused by each harm--here, the fall and subsequent failure to secure adequate medical attention. However, the special verdict form to which appellant consented in no way asked the jury to apportion harm. The jury was asked only to determine damages resulting from "the accident." The $340,100 verdict thus was the amount the captain would have contributed to the support of his family had he not had "the accident." Questions # 8-10, Appendix. Since the captain's injuries from the fall were quite severe, a jury asked to apportion damages might have found that he would have died or have been disabled no matter what medical care he received after the fall.[1] Entry of a judgment of $340,100, therefore, cannot be justified.
 
 
 6
 Nor can we allow appellant to try the case anew on a theory steadfastly avoided until after the verdict. Plaintiff lumped her claim for negligence in furnishing medical attention with her claims for the fall, thus opening the way for the application of principles of comparative negligence. This was by no means compelled by the available legal remedies since she could have fashioned a separate claim for maintenance and cure that would have insulated the damage award for inadequate medical care from reduction on grounds of the captain's negligence. G. Gilmore and C. Black, The Law of Admiralty 290-91 (2d ed. 1975). However, that strategy would have required apportionment of damages between the fall and inadequate medical care, a step her counsel might well have believed would weaken her claims for more fulsome damages. Having chosen to go for the brass ring at trial, appellant may not have a retrial on the size of the consolation prize.
 
 
 7
 We must reverse on the discount rate, however. The jury found the discount rate to be 20% for the contributions the captain would have made to his family had he lived. The district court found that the 20% figure had no support in the record, and reduced the discount rate to 10%. However, we find that the only evidence in the record as to the discount rate during the applicable period in Holland, where the widow and children live, is 6%. We hold that this latter figure is the maximum permitted by the record and that judgment should be entered in accord with the correct discount rate.
 
 
 8
 We have considered the other contentions made by appellant and find them to be without merit. Affirmed in part, reversed in part.
 
 
 9
 _____ APPENDIX
 
 
 10
 1: Was the forepeak tank of the Universe Kuwait seaworthy-- that is, was it
 
 
 11
 reasonably fit for its intended purpose or use?
 
 Yes No
 
 12
 2: Was the captain caused to fall in the forepeak tank by reason of any
 
 
 13
 negligence of the ship owner--that is did the ship owner fail to do that
 
 
 14
 which a reasonable or prudent person would have done in a similar situation?
 
 Yes No
 
 15
 3: Did the ship owner use due care after the fall and make all reasonable
 
 
 16
 efforts under the circumstances to secure appropriate medical treatment for
 
 
 17
 the captain?
 
 Yes No
 
 18
 If your answer to one is yes, two is no and three is yes, you are to find for
 
 
 19
 the defendant and report that verdict.
 
 
 20
 4: If, on the other hand, you have found the vessel unseaworthy in answer to
 
 
 21
 one above, do you find that the unseaworthiness proximately caused the
 
 
 22
 captain's accident and injuries?
 
 
 23
 Yes No N/A
 
 
 24
 5: If you find the ship owner negligent in answer to two above, do you find
 
 
 25
 that such negligence played a part, even the slightest, in causing the
 
 
 26
 accident and the captain's injuries?
 
 
 27
 Yes No N/A
 
 
 28
 6: If you find the ship owner negligent in answer to three above, do you find
 
 
 29
 that such negligence played a part, even the slightest, in causing the
 
 
 30
 captain's injuries and/or death?
 
 Yes No
 
 31
 Unless you find the answer is yes as to four or five or six above, you are to
 
 
 32
 report a verdict for the defendant and proceed no further.
 
 
 33
 If you have answered yes to four or five or six, then and only then do you
 
 
 34
 consider the following questions having to do with damages.
 
 
 35
 7: Under all the circumstances, how many years do you find the captain would
 
 
 36
 have lived after 1977 had he not suffered the accident?
 
 18-20 years
 
 37
 8: How many years do you find he would have continued to work had he not had
 
 
 38
 the accident in 1977?
 
 13 years
 
 39
 9: As to any period you find he would have worked before November, 1984, how
 
 
 40
 much do you find he would have contributed to his wife and any minor children
 
 
 41
 for their support in that period?
 
 
 42
 $170,000.00
 
 
 43
 10: If you find he would have worked after November, 1984, how much do you find
 
 
 44
 he would have contributed to the support of his wife and any minor children
 
 
 45
 in such of that period as you find he would have worked?
 
 
 46
 $170,100
 
 
 47
 11: Do you find he would have contributed services, nurture and guidance to the
 
 
 48
 family had he lived?
 
 Yes No
 
 49
 12: If your answer to eleven is yes, for how many years do you find he would
 
 
 50
 have made such contribution?
 
 0 years N/A
 
 51
 13: What do you find the value of the lost services to be for the period priorto November, 1984?
 
 
 52
 $0 N/A
 
 
 53
 14: What do you find the value of the lost services to be for any period you
 
 
 54
 find they would have been given subsequent to November, 1984?
 
 
 55
 $0 N/A
 
 
 56
 15: As to any sums stated in answer to questions ten or fourteen above, those
 
 
 57
 must be discounted to present value. By what amount do you find they should
 
 
 58
 be discounted?
 
 
 59
 20%
 
 
 60
 16: If you find the vessel unseaworthy or if you find the ship owner's
 
 
 61
 negligence caused the captain's fall and injuries and death, do you also find
 
 
 62
 that any negligence on the part of the captain contributed to that fall and
 
 
 63
 injuries and death?
 
 Yes No
 
 64
 17: If your answer is yes to question sixteen above, what percentage do you
 
 
 65
 find the captain contributorily negligent?
 
 
 66
 66 2/3%
 
 
 
 *
 Judge Friendly participated in the oral argument in this case and voted before his death on March 11, 1986 in favor of the disposition reached in this opinion
 
 
 [1]
 Appellant offered expert medical testimony that the captain more probably than not would have survived had proper and prompt medical attention been afforded. The jury was not bound as a matter of law to accept that opinion, however. Moreover, there was no evidence as to the extent of disability that might have resulted if the captain had survived